# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SCHELLE HODGES,
       Plaintiff,

      v.

THE GLENHOLME SCHOOL, *et al.*,
       Defendants.

No. 3:15-cv-1161 (SRU)

## RULING AND ORDER

On July 30, 2015, the plaintiff, Schelle Hodges, filed a complaint against the defendants, the Glenholme School, Claudia Nicholas, Stephen Nicholas, and John Does One, Two, and Three, alleging various claims arising from Mr. and Ms. Nicholas' alleged sexual assault of Hodges in 1981 and 1982. (doc. 1) In response to the defendants' motions to dismiss that complaint because of defects in service and the running of the statute of limitations, Hodges filed an amended complaint on October 16, 2015 adding the Devereux Foundation, Inc. as a defendant. (doc. 44) I denied the initial motions to dismiss without prejudice, and the identified defendants then moved to dismiss the amended complaint with prejudice under Rule 12(b)(6) and Rule 12(b)(5). (docs. 57, 58, and 60) I held a hearing on those motions on April 6, 2016.

For the following reasons, I find persuasive the defendants' arguments that the complaint should be dismissed for failure to state a claim, and their motions are **granted with prejudice**; accordingly, the defendants' arguments that the complaint should be dismissed for ineffective service are not reached.

I.      **Standard of Review**

   A.   Motion to Dismiss for Failure to State a Claim

   A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

   When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

   Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## II.    Background

A.  <u>Substantive Facts</u>

Hodges was born on August 1, 1967. Rule 26(f) Rep't § V (doc. 33). She turned 48 on August 1, 2015.

The following facts are as alleged in the amended complaint. In 1981 and 1982, Hodges was a full-time residential student at the Glenholme School, which was operated by the Devereux Foundation, a corporation incorporated and headquartered in Pennsylvania.[1] Am. Compl. at ¶ 13. Claudia Nicholas was a school nurse employed at the School during that period. *Id.* at ¶ 16. Hodges was repeatedly physically and sexually assaulted by Ms. Nicholas and her husband, Stephen Nicholas, and they threatened her to prevent her from telling anyone about the abuse. *Id.* at ¶¶ 20–23.

In the meantime, staff at the School told Hodges she was "fortunate to have a special relationship" with Ms. Nicholas. *Id.* at ¶¶ 24, 25. School employees, including John Does Two and Three, knew or should have known that Ms. Nicholas was taking Hodges off-campus. *Id.* at ¶ 18. Hodges alleges that the other named defendants had knowledge that Ms. Nicholas posed a threat to minors as follows:

> Prior to, during, and immediately after, the time Plaintiff was sexually abused . . . Defendants The Glenholme School, The Devereux Foundation, Inc., and Stephen Nicholas had information that Defendant Claudia Nicholas had entered into inappropriate relationships with others at The Glenholme School, that Defendant Claudia Nicholas engaged in conduct involving serious boundary violations and that Defendants The Glenholme

---

[1] Hodges characterizes the School as an "unincorporated association." She asserts in her complaint that the Glenholme School was "operated at times by Defendant Devereux Foundation," Am. Compl. at ¶ 13, but states in her Opposition to the defendants' motions that she requires more information to determine whether the Devereux Foundation is in fact responsible for liabilities incurred by the school in the 1980s, Pl. Opp'n Br. at 39–40. The Foundation appears to assume the liabilities of the School in its motion. It asserts that the Glenholme School is a fictitious trade name for a school wholly operated by the Foundation, and in support of that assertion provides a Certificate of Trade Name filed in Connecticut on October 30, 2006. Devereux Br., Ex. F. That dispute is relevant to the Rule 12(b)(5) motion, but because I dismiss the complaint on the 12(b)(6) motion with prejudice, I do not need to resolve that dispute.

> School, The Devereux Foundation, Inc., and Stephen Nicholas knew
> Defendant Claudia Nicholas posed a danger to the minors attending The
> Glenholme School.

*Id.* at ¶ 28. Hodges asserts that information was "fraudulently concealed" from her and her parents. *Id.*

While she was still enrolled at the School, Hodges "expressed confusion" to her mother regarding her "experiences at The Glenholme School." *Id.* at ¶ 25. Her mother called the School to discuss "issues Plaintiff reported." *Id.* School Administrators dismissed her concerns. *Id.* In the spring of 1982, while Hodges was home with her parents, Ms. Nicholas "came to the Plaintiff's parents' home in the middle of the night and tried to get the Plaintiff to leave the Plaintiff's parents' home with [her]. The Plaintiffs' parents told [Ms. Nicholas] to leave." *Id.* at 26. Hodges did not thereafter return to the School. *Id.*

Hodges alleges that she "did not know she was a victim of sexual abuse." *Id.* at ¶ 27. She "was not able to understand until the spring of 2013 that [she] had been sexually abused as a child." *Id.* The discovery occurred during a conversation with a friend, who told Hodges that she was describing sexual abuse. *Id.*

## B. Procedural Facts

Hodges filed her initial complaint on July 30, 2015. (doc. 1) The parties agree that, under Connecticut law, apart from any exceptions, the statute of limitations on Hodges' claims ran out on August 1, 2015, thirty years after she reached the age of majority. *See* Conn. Gen. Stat. §§ 52-577d (setting statute of limitations for personal injury damages for sexual abuse to minors at thirty years after reaching the age of majority); 1-1d (setting 18 as the age of majority).

4

The marshal serving the complaints received the summons and complaint against The Glenholme School and Mr. Nicholas on August 5, 2015.[2] (docs. 13, 24) The marshal attempted to serve The Glenholme School by serving a summons on Catherine A. Naum on August 6, 2015. (doc. 24) Stephen Nolan, Senior Vice President and General Counsel of the Devereux Foundation, asserts in an affidavit that Naum is a staff receptionist at the School, and is not an agent authorized to receive process for the School or the Foundation. Devereux Br., Ex. G. The marshal attempted to serve Mr. Nicholas by leaving a summons at his "usual place of abode" in Warren, Connecticut on August 6, 2015. (doc. 13) The marshal served Ms. Nicholas by leaving a summons for her at the same address on the same day. (doc. 14) Hodges does not allege that any of the defendants were aware of her complaint before they were served.

The summons for the Devereux Foundation was received and served by the marshal on the Connecticut Secretary of State on October 19, 2015, following the addition of the Foundation as a defendant in the amended complaint. (doc. 53)

## III.   Discussion

In three largely identical motions,[3] the defendants raise three main arguments: (1) Hodges has failed to adequately plead fraudulent concealment that would justify tolling the statute of limitations; (2) the suit was not "commenced" before the statute of limitations had run, so the Connecticut accidental failure of suit statute, Conn. Gen. Stat. § 52-592(a), was not triggered; and (3) service of process on the School, the Foundation, and Mr. Nicholas was insufficient. Hodges properly concedes that Connecticut law deems an action has "commenced" for the purposes of the statute of limitations only after the service of the summons and complaint, and

---

[2] On the executed summons for Ms. Nicholas, the date on which the marshal received the complaint has not been completed. (doc. 14)

[3] The Devereux Foundation appears to be the lead defendant, and accordingly, I will rely on the Foundation's brief for shared citations.

further concedes that the defendants were not properly served before the statute had run.[4] Because I determine that Hodges cannot toll the statute of limitations, I do not address the service of process issue.

A. Fraudulent Concealment

Hodges attempts to toll the applicable statutes of limitations pursuant to Conn. Gen. Stat. § 52-595, which states that if the defendant fraudulently concealed the existence of a cause of action, the action is then deemed to accrue from the time of discovery.

To prove fraudulent concealment, plaintiffs must show:

> (1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiffs' cause of action; (2) that defendant's intentional concealment of these facts from the plaintiffs; and (3) that defendant's concealment of the facts for the purpose of obtaining delay on the plaintiffs' part in filing a complaint on their cause of action.

*Bartone v. Robert L. Day Co.*, 232 Conn. 527, 533 (1995). In addition, "the plaintiff must be ignorant of the facts that the defendant has sought to conceal." *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 427 (2d Cir. 1999). Plaintiffs must "allege with particularity the circumstances surrounding the alleged fraudulent concealment." *OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 504–05 (D. Conn. 2007) (citing Fed. R. Civ. P. 9(b)); *see also Dennany v. Knights of Columbus*, 2011 WL 3490039, at *7 (D. Conn. Aug. 10, 2011).

---

[4] The defendants also argue that the action is not saved under Conn. Gen. Stat. § 52-593a, which states:

> [A] cause or right of action shall not be lost because of the passage of the time limited by law within which the action may be brought, if the process to be served is personally delivered to a state marshal, constable or other proper officer within such time and the process is served, as provided by law, within thirty days of the delivery.

Conn. Gen. Stat. § 52-593a. The executed returns of summons for both the Glenholme School and Mr. Nicholas state that the marshal did not receive the process until after the statute of limitations had run. And although Ms. Nicholas' executed return does not include any statement of the date when the marshal received process, Hodges appeared to concede during the hearing that the marshal received process for all three defendants on the same date.

As a preliminary matter, Hodges attempts shirk her burden to plead the elements of fraudulent concealment. She invokes *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, where the Second Circuit stated:

> We conclude that where a defendant owes a fiduciary duty to a plaintiff and the plaintiff asserts under the fraudulent concealment tolling statute that the defendant has fraudulently concealed the plaintiff's cause of action, Connecticut law requires that the defendant bear the burden of proof as to the elements of fraudulent concealment set out in *Bartone*. If the fiduciary is to avoid the application of the tolling statute, the defendant must show that one of these elements is not met.

196 F.3d at 423. But that burden-shifting approach has not been adopted by Connecticut courts. *See Iacurci v. Sax*, 139 Conn. App. 386, 395 n.2 (2012)*, aff'd,* 313 Conn. 786 (2014) ("[T]o our knowledge, no Connecticut court has held that a fiduciary bears the burden of proving fair dealing, or that the elements of fraudulent concealment are not met, when faced with an allegation of fraudulent concealment."); *see also Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 105 (2007) (where a fiduciary relationship was asserted, burden remained on the plaintiff to show the elements of fraudulent concealment). Instead, the Connecticut Supreme Court has considered only whether the plaintiff's showing of a fiduciary relationship satisfies the *second* element of fraudulent concealment—namely, intentional concealment—and has considered that issue only *arguendo*, noting that it has not adopted the "federal" approach.  *See Iacurci v. Sax*, 313 Conn. 786, 800 & n.8 (2014). Because Connecticut courts have not adopted the federal interpretation on which Hodges relies, in this diversity case the burden remains on Hodges to allege fraudulent concealment.

The defendants argue Hodges has not alleged all of those elements against any of the defendants with sufficient particularity. At the hearing, Hodges was given an opportunity to state on the record how she would further amend her complaint to meet the particularity requirements.

7

Here, I first consider the defendants' arguments with respect to the complaint-as-filed, and then consider whether Hodges' proposed amendments would resolve the deficiencies I have identified.

      1.  *The School*[5]

The School primarily argues that in the complaint-as-filed, Hodges has failed to adequately allege that: (1) the School had knowledge that Ms. Nicholas posed a threat to children; (2) its concealment of that knowledge was for the *purpose* of running out the statute of limitations; and (3) Hodges herself lacked sufficient knowledge of the facts to put her on inquiry notice of her cause of action.

      a.  The School's Knowledge

Hodges alleges the following facts in support of her argument that the Glenholme School had actual awareness that Ms. Nicholas posed a threat to the children in her care: (1) at and before the time of Hodges' assault, the School "had information" that Ms. Nicholas "had entered into inappropriate relationships with others at The Glenholme School," "engaged in conduct involving serious boundary violations," and "posed a danger to minors attending [the School]." Am. Compl. at ¶ 28. She also alleges that the School staff knew she was spending time alone with Ms. Nicholas and had a "special relationship" with her. Am. Compl. at ¶ 18, 24. Finally, Hodges alleges that her mother called the School to discuss Hodges' "experiences" there. Am. Compl. at ¶ 25. In the complaint-as-filed, Hodges does not cite the circumstances that ultimately led to her departure from the School as evidence of the School's knowledge—namely, Ms.

---

[5] For the purposes of this section, I will refer to the School and Foundation collectively as "the School" and will further assume that a successful allegation against the School would also apply to the Foundation.

Nicholas' appearance at her family home at night, and the confrontation between Ms. Nicholas and Hodges' parents. Am. Compl. at ¶ 26.

The School correctly argues that those allegations are insufficiently precise to meet the Rule 9(b) requirements. The allegations that the School knew about other inappropriate conduct by Ms. Nicholas "do not offer articulable facts that [the School] knew and concealed from [Hodges]. They are, instead, legal conclusions." *Dennany v. Knights of Columbus*, 2011 WL 3490039, at *7–8.[6] In *Dennany*, the plaintiff alleged that the defendant was "aware that adult leaders used the Columbian Squires to gain access to boys for purposes of pedophilia" and that it "had knowledge of [the abuser's] history of sexual perversity and inappropriate contacts with children . . . [and] actively took steps to conceal its knowledge." *Id.* at *7. I held that those statements were insufficient for the purposes of Rule 9(b) because they "d[id] not tell the court what th[e] red flags were, when [the defendant] knew of them, when [the plaintiff] knew of them, and how [the plaintiff] did so." *Id.* at *8. The statements in the present case are even less specific—they do not identify the nature of the "inappropriate relationships," when or how the School learned about them, and when or how Hodges learned about either the relationships or the School's knowledge of them.

Hodges' other statements regarding the School's knowledge of her "special relationship" with Ms. Nicholas and her mother's discussion of her "issues" with the School suffer from similar infirmities. *Martinelli*, to which Hodges cites, is not comparable—in addition to being decided long after the motion to dismiss stage and not actually ruling on any Rule 9(b) issues, in that case there was evidence that the defendant had knowledge of two other specific victims, one

---

[6] Hodges asserts that *Dennany* is inapplicable here because it relies on Texas law. Although the decision concludes that Texas law governs the substantive legal issues, it declines to resolve whether Texas or Connecticut law governs the statute of limitations question, and instead determines that the plaintiff's fraudulent concealment argument is insufficient under either of the substantially similar state doctrines.

of whom had required hospitalization, and also discussed when the defendant learned about those two cases. *Martinelli*, 196 F.3d at 426.

### b.  Purposeful Concealment

Hodges argues that because the School owed her a fiduciary duty, non-disclosure is sufficient to show that the School concealed the existence of the claim, the second element of fraudulent concealment. *See Martinelli*, 196 F.3d at 424; *see also Fenn v. Yale Univ.*, 283 F. Supp. 2d 615, 636 (D. Conn. 2003) ("Although the fraudulent concealment tolling statute generally requires an affirmative act of concealment beyond mere silence, non-disclosures are sufficient where, as here, the defendant is under a fiduciary duty to disclose material facts."). As discussed above, Connecticut courts have not yet accepted that presumption; however, even if I assume that non-disclosure by a fiduciary is sufficient to meet the second element (and further assume that the School was a fiduciary at a time when it acquired knowledge of the alleged abuse), Hodges has still failed to meet the third element, concealment *with intent* to run out the statute of limitations.

The Connecticut Supreme Court explained in *Bartone v. Robert L. Day Co.* that:

> [e]vidence of a misrepresentation does not itself establish that a defendant misrepresented those facts with the intent necessary to constitute fraudulent concealment. The actions of the defendant must be directed to the very point of obtaining the delay of which he afterward seeks to take advantage by pleading the statute.

232 Conn. at 534 n.5 (quotation marks and citations omitted). Although intent may be pleaded "generally" under Rule 9(b), "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and

opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290–91 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Although intent to conceal cannot be presumed, "a reasonable inference that a defendant's acts of concealment were aimed at delaying or preventing legal action is a recognized basis upon which to toll the statute of limitations." *Fenn v. Yale Univ.*, 283 F. Supp. 2d at 637.

Hodges points to paragraphs 22, 23, 25, 28, and 30 of the Amended Complaint in support of her argument that she has sufficiently alleged that "the Defendants" acted with the intent to delay. *See* Pl.'s Opp'n at 16. Those paragraphs do not, however, establish the School's intent. Paragraphs 22 and 23 allege that Ms. Nicholas threatened and physically abused Hodges to prevent her from telling anyone else about the abuse. Paragraph 25 alleges that after Hodges' mother called the School to discuss Hodges' "experiences," the School told her mother not to listen to her. Paragraph 28 includes the conclusory allegations described above regarding the School's alleged knowledge of Ms. Nicholas' conduct with others. Paragraph 30, another bald allegation, states only that Mr. and Ms. Nicholas "misrepresented and concealed from the Plaintiff the wrongful nature of the explicit sexual behavior and lewd and lascivious conduct and that such explicit sexual behavior and lewd and lascivious conduct could harm the Plaintiff."

None of those allegations demonstrates anything close to the intent to conceal *from Hodges* sexual abuse she suffered or the School's alleged knowledge of the same for the duration of the three-year statutes of limitations for negligent hiring and breach of fiduciary duty claims. Hodges' allegations that Ms. Nicholas threatened her to prevent disclosure to anyone else do not equate to preventing Hodges herself from being able to realize and recognize the fact that she had been abused, and those allegations certainly have no bearing on the intent and action of the

School. Hodges' allegations regarding her mother's discussion with the School come closest to suggesting purposeful concealment of Ms. Nicholas' misconduct, but without more they are too vague to meet the Rule 9(b) requirements.

### c.   Hodges' Own Knowledge

Even assuming that Hodges had met all three of the above elements with respect to each defendant, however, the complaint-as-filed crucially fails to adequately allege her own lack of knowledge of the abuse.

A plaintiff need not have an understanding of the full extent of her harm, nor its legal import, in order to have sufficient knowledge to bring a claim. *See, e.g.*, *Maslak v. Maslak*, 2013 WL 5663798, at *4 (Conn. Super. Ct. Sept. 27, 2013) ("[E]quitable tolling only permits a plaintiff to avoid the bar of the statute of limitations if *despite all due diligence,* he is unable to obtain vital information bearing on the existence of his claim . . . When a plaintiff learns of information that would lead to discovery of a cause of action through due diligence, the statute of limitations runs even if there has been fraudulent concealment.") (citations omitted) (emphasis in original).

The relevant portion of the amended complaint states that Hodges was not able to "understand" her abuse as such until 2013, but not that she was unaware of the underlying facts—accordingly, she was at least on "inquiry notice" of her abuse. Am. Compl. at ¶ 27. The minimal explanation of how Hodges came to that understanding further enforces that inference: "[Hodges' understanding] occurred as [Hodges] was recalling and reporting these events in the Spring of 2013 to a friend who then told [Hodges] the conduct [Hodges] reported was sexually abusive conduct." *Id.* That allegation does not describe a case of repressed memory; instead, the

allegation relates that Hodges was aware of the events described in her complaint, but not of their legal implications.

There is also a catch-22 for Hodges with respect to her allegations regarding the School's knowledge. Paragraph 25 of the amended complaint, which alleges that Hodges expressed "confusion" to her mother, who then discussed Hodges' "issues" with the School, is cited repeatedly in the plaintiff's opposition brief as supporting her allegation that the School had actual knowledge of the abuse. *See* Pl.'s Opp'n Br. at 14–16, 23. But if Hodges' statements to her mother were in fact a disclosure of her abuse, then it is hard to see how she can also allege that neither she nor her parents had knowledge of the abuse.[7] Similarly, if Hodges' account of Ms. Nicholas' disturbing appearance at her parents' house led directly to her removal from the School, it is implausible that extreme event would not have also put Hodges and her parents on at least inquiry notice of the possibility of abuse. *See* Am. Compl. at ¶ 26.

Hodges' allegations regarding her lack of knowledge of the facts underlying her negligent hiring claim against the School suffer from a different infirmity. Although it is generally plausible that she would not have known facts giving rise to that claim for some time—such as information that the School retained Ms. Nicholas despite knowledge of previous instances of "inappropriate relationships"—she wholly fails to allege in her complaint *when* or how she eventually discovered those facts such that I could determine the period during which the three-year statute of limitations would be tolled.

---

[7] Hodges may be suggesting that when her attempts to disclose the abuse as a minor were unsuccessful and met with denial, that event intensified a coping mechanism that included repressed memories. *See, e.g.*, *Hammer v. Hammer*, 142 Wis. 2d 257, 263 (Ct. App. 1987) (describing same as a predictable PTSD reaction). But she has not alleged those facts, and to the contrary, she has alleged facts suggesting that her family was supportive of her claims, as indicated by her removal from the school.

Because Hodges has failed to adequately plead that the School had actual knowledge of the pertinent underlying facts; that the defendants acted with the intent to run out the statute of limitations; or that she herself did not have sufficient knowledge of the underlying facts, I find Hodges' efforts to invoke the fraudulent concealment doctrine to save in the complaint-as-filed are unsuccessful.

    2.   *Stephen and Claudia Nicholas*

Hodges' failure to allege her own lack of knowledge in complaint-as-filed is also fatal to her fraudulent concealment claims against Stephen and Claudia Nicholas. Mr. Nicholas' position at the School is not alleged; however, assuming that both Mr. and Ms. Nicholas could be considered to have held fiduciary positions with respect to Hodges at the time of the abuse and that those responsibilities satisfy the second fraudulent concealment element,[8] Hodges' allegations of *purposeful* concealment by the Nicholases suffer from the same infirmities as the allegations against the School—Hodges has alleged that the Nicholases concealed from Hodges the *nature* of the abuse to which she was allegedly subjected, but not the fact of that abuse. I note, however, that some of the other infirmities in her allegations against the School are not present against the individual defendants—for instance, the Nicholas' knowledge of the abuse is easily established through their alleged participation in it.

---

[8] I note that the implication of either individual defendant's fiduciary obligation to disclose the other's abuse to Hodges is somewhat unclear, and the duration of that obligation has not been discussed by the parties. I believe the case can be dismissed without reaching that question, however, so I assume without deciding that the second element of a fraudulent concealment claim has been met against all defendants on the basis of some kind of fiduciary relationship with Hodges.

3. *Hodges' Proposed Amendments*

During the oral argument, Hodges was provided an opportunity to state on the record how she could further amend the complaint to resolve any deficiencies. She asserted that she had a good faith basis for the following additions:

- After filing the initial complaint, but prior to filing the amended complaint, Hodges learned that the School had knowledge prior to Hodges' formal withdrawal that Ms. Nicholas was engaging in inappropriate sexual relationships with others at the School. Hodges did not specify when or how the School obtained that knowledge, or whether those relationships were with minors or adults.

- During the same time period, counsel also received a call from a person who was identified on the record only as having knowledge of the events, and who asserted that following Ms. Nicholas' appearance at Hodges' parents' home, Mr. Nicholas discovered a letter between Hodges and Ms. Nicholas that was apparently brought to the School's attention. She further asserted that the letter was discovered before Hodges formally withdrew from the School, and led to Ms. Nicholas' immediate termination. Hodges did not specify when or how the letter was discovered, who wrote the letter, any description of its contents, or when it was provided to a supervisory authority at the School. Instead, she asserted those details could be inferred in her favor based on the temporal proximity to Ms. Nicholas' termination.

- At or around the time that Ms. Nicholas was terminated, the individual defendants and the School agreed to keep Hodges' abuse quiet. The form and context of that agreement were not described.

- Hodges did not formally withdraw from the School immediately following Ms. Nicholas' appearance at her parents' home, as suggested by the first amended complaint, but instead, on the information and belief of Hodges' counsel, she remained an official student through the end of that semester.

- After she reached the age of majority, Hodges did not remember what had happened to her until 2013. She did not give further details regarding the process of recovery of what appears to be an allegedly "repressed memory."

Hodges did not specify why those additional facts, which she claimed were discovered between the filing of the initial and first amended complaints, were not included in the amended complaint.

Those additions fail to make a plausible allegation of fraudulent concealment against the School. Hodges did not identify any of the supervisory individuals at the School who allegedly participated in the relevant events. She did not allege with any specificity the identity of the other alleged victims, nor how they were discovered. It is easy to claim the existence of other victims based on "information and belief," but such claims are not sufficient to meet the heightened Rule 9(b) requirements applied to a fraudulent concealment claim. Accordingly, Hodges has failed to adequately allege fraudulent concealment and the claims against the School are **dismissed with prejudice** as barred by the statute of limitations.

The additions also seriously undermine Hodges' fraudulent concealment claim against Mr. Nicholas. Instead of concealing the fact of the abuse, Hodges now appears to suggest that

16

Mr. Nicholas actually did make an effort to disclose the abuse by showing the letter between Ms. Nicholas and Hodges to some supervisory authority. The additions also implicate *Twombly*'s plausibility requirements—Hodges made no attempt to reconcile her new account of Mr. Nicholas as the discoverer of Ms. Nicholas' abuse with her previous allegations that he, in fact, participated in the abuse. Accordingly, Hodges has failed to adequately allege fraudulent concealment and the claims against Mr. Nicholas are **dismissed with prejudice** as barred by the statute of limitations.

Finally, even assuming that Hodges' new allegations would make out a plausible "repressed memory" claim, and accordingly establish her own lack of knowledge of her abuse, she has still failed to improve her allegations that Ms. Nicholas' concealment of the abuse was *for the purpose* of running out the statute of limitations. Accordingly, Hodges has failed to adequately allege fraudulent concealment and the claims against Ms. Nicholas are also **dismissed with prejudice** as barred by the statute of limitations.

### B. Accidental Failure of Suit Statute

Hodges argues that, even if her fraudulent concealment arguments fail, her suit could nevertheless be refiled under Conn. Gen. Stat. § 52-592, the "accidental failure of suit" statute, and accordingly should equitably be allowed to proceed.

Section 52-592(a) provides in relevant part:

> (a) If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment.

17

Section 52-592(a) thus imposes two requirements on cases like the present one: (1) the action must be "commenced" within the statute of limitations period; and (2) the action must fail "because of insufficient service." Hodges bears the burden of proof as the party seeking the benefit of the accidental failure of suit statute. *See Ruddock v. Burrowes*, 243 Conn. 569, 576–77 (1998).

In order to avoid rendering the statute meaningless, the Connecticut Supreme Court has differentiated the "commencement" requirement in section 52-592(a) from the ordinary requirement that a case is "commenced" for statute of limitation purposes only with valid service of process. *Rocco v. Garrison*, 268 Conn. 541, 550–51 (2004). The parties dispute what is required instead: Hodges, relying on my opinion in *Chappetta v. Soto*, 581 F. Supp. 2d 292 (D. Conn. 2008) ("*Chappetta II*"), argues that, in federal court, simply filing the case is sufficient. In *Chappetta II*, I determined that "[t]he principal legal holding of *Rocco* is that the commencement of an action for purposes of the savings statute means something less than the commencement of an action for statute of limitations purposes. In all other respects, the Connecticut Supreme Court decided that case on its facts." *Id.* at 295. In the absence of additional guidance from the Connecticut Supreme Court, I weighed two competing interpretations of *Rocco*'s ruling: first, that the case was "commenced" within the meaning of the statute when the defendant received *effective* notice of the action within the time allotted, *id.* at 296 (citing *Rocco*, 268 Conn. at 552); and second, that the action was "commenced" when it was filed in federal court. *Id.* at 295–98. I concluded that the latter was a "better reading" of *Rocco*. *Id.* at 296, 298.

As the defendants point out, however, my prediction was incorrect. The Connecticut Supreme Court has subsequently endorsed the "effective notice" interpretation of *Rocco* as follows:

> As explained previously herein, in *Rocco,* this court explicitly explained
> that the "plaintiffs' original action was 'commenced,' for purposes of the
> savings statute, when the defendant received actual notice of the action
> within the time period prescribed by the statute of limitations."

*Dorry v. Garden*, 313 Conn. 516, 530 (2014); *see also Berlin v. Israel*, 2015 WL 3974578, at *2

(Conn. Super. Ct. June 2, 2015) ("The Court in *Dorry* concluded that the action commenced

when the defendant received effective notice of the action within the time period prescribed.");

*Weinstein & Wisser, P.C. v. Cornelius*, 2015 WL 6558462, at *6 (Conn. Super. Ct. Oct. 7, 2015)

(same). Hodges attempted to distinguish *Dorry* on the grounds that the defective commencement

in that case had occurred in state court. But *Dorry* itself flatly rejected a comparable attempt to

distinguish *Rocco*, where the initial defective commencement had been in federal court, when it

determined that *Rocco* court held the case had commenced only when "defendant had received

effective notice." *Dorry*, 313 Conn. at 530 ("The defendants . . . assert that . . . this court's

holding in *Rocco* was based on the fact that the plaintiffs had followed the federal service rules,

not that the defendant had effective notice within the statute of limitations. We disagree.").

Effective notice, in turn, appears to require as a minimum that the defendant somehow

received a copy of the complaint prior to the expiration of the statute of limitations. *Berlin*, 2015

WL 3974578, at *3 (suggesting that receipt of a copy of the writ, summons, and complaint is

required for effective notice); *see also id.* ("The court knows of no case where an action has been

determined to have been commenced against a defendant based simply on the fact that the

defendant heard about it, but had not received or been served a copy of the complaint."). In the

present case, like in *Chappetta v. Soto*, 453 F. Supp. 2d 439 (D. Conn. 2006) ("*Chappetta I*"),

"[t]here is no evidence in the present record whether or not the defendant[s] in this case received

actual notice of the lawsuit" before the relevant statutes of limitations expired. *Id.* at 443. There

has been no suggestion that the School received notice of Hodges' suit before the three-year

statutes of limitation ran for the negligent hiring, employment, and breach of fiduciary duty claims ran out. Hodges has also failed to make any allegation that Ms. or Mr. Nicholas had notice of the suit before the applicable thirty-year statute of limitations ran out for the claims against them. Accordingly, she has failed to show that section 52-592(a) should apply to save her case.

## IV.    Conclusion

In conclusion, Hodges has failed to adequately allege fraudulent concealment and so the defendants' motions to dismiss for failure to state a claim are **granted**. (docs. 57, 58, and 60) As noted above, Hodges had the opportunity to explain what would be included in additional amended pleadings on the record. Because her proposed additions would nevertheless fail to resolve the deficiencies in her pleadings, the defendants' motions to dismiss are granted **with prejudice**.


So ordered.

Dated at Bridgeport, Connecticut, this 13th day of September 2016.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge